**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2039-24

THE PLASTIC SURGERY
CENTER, PA,

     Plaintiff-Appellant,

v.

UNITEDHEALTHCARE
INSURANCE COMPANY
and MEDICAL AUDIT &
REVIEW SOLUTIONS, INC.,

     Defendants-Respondents.

_____

        Submitted March 9, 2026 – Decided March 18, 2026

        Before Judges Sabatino and Bergman.

        On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3127-24.

        Maggs, McDermott & DiCicco, LLC, attorneys for appellant (Michael M. DiCicco, of counsel and on the brief; Juan C. Cervantes, on the briefs).

        Matthew P. Mazzola (Robinson & Cole, LLP) and Raymond J. Carta (Robinson & Cole, LLP), attorneys for respondent UnitedHealthcare Insurance Company

(Matthew P. Mazzola, of counsel and on the brief; Raymond J. Carta, on the brief).

Erin M. Turner (Phelps Dunbar LLP), Errol King (Phelps Dunbar LLP) of the Louisiana bar, admitted pro hac vice, and Taylor J. Crousillac (Phelps Dunbar LLP) of the Louisiana bar, admitted pro hac vice, attorneys for respondent Medical Audit & Review Solutions, Inc. (Erin M. Turner, Errol King, and Taylor J. Crousillac, on the brief).

PER CURIAM

This matter stems from a document that a third party sent electronically to a medical provider at the behest of a health insurer, in an attempt to settle a dispute over payment on a surgical bill.

The provider contended the document was an offer to enter into a binding settlement agreement at a specified amount, and that it validly accepted that offer. In response, the insurer and the third party argued the document was merely an invitation to the provider to reduce its monetary demand, and that the insurer never accepted the revised demand and thus, no binding agreement was formed. The insurer instead paid a much lower sum to the provider, which the provider deemed insufficient and contrary to its understanding of the third party's communication.

The provider sued the insurer and the third party, arguing theories of breach of contract, promissory estoppel, and negligent misrepresentation.

2

Defendants moved to dismiss the complaint.  The trial court granted the dismissal motion, although it expressed misgivings about the electronic communication.

For the reasons that follow, we affirm.

We summarize the pertinent background concisely.  Plaintiff, the Plastic Surgery Center, PA ("PSC"), an out-of-network provider, performed reconstructive surgery in November 2020 on a patient ("B.S."[1]) insured through an ERISA[2] plan of her employer administered by defendant UnitedHealthcare ("United").  PSC apparently did not obtain any form of pre-approval of coverage before proceeding with the surgery, presumably because of its out-of-network status.

After the surgery, PSC billed United $107,735.  United did not directly communicate with PSC but instead engaged a third party, codefendant Medical Audit & Review Solutions, Inc. ("MARS"), a cost-management and negotiation vendor, to contact PSC and attempt to negotiate payment.

---

[1]  We use initials, as did the briefs and the record, to protect the patient's privacy.  R. 1:38-3(a)(2).

[2]  The Employment Retirement Income Security Act, 29 U.S.C. §§ 1001-1461.

A-2039-24

On or about December 4, 2020[3], MARS, through a portal, electronically sent PSC a one-page form document (the "portal document")[4].

Among other things, the portal document prescribed that if PSC agreed to accept the proposed reduced sum of $54,000 as payment and United paid that sum within ten business days, PSC would promise not to "balance bill" the patient or pursue the remainder unless the services were not covered under the ERISA plan. However, as the trial court noted and we will discuss more in depth, the portal document also explicitly stated it was "not a guarantee of payment" and contained disclaimers of liability by both United and MARS.

In particular, in the heading of the portal document, $107,375.00 was denoted as the "billed charges," while $54,000 was identified as the "agreed amount." United was identified as the "payor." The term "payment terms" was followed by this language: "[PSC] agrees to accept the above, provided that payment is released within 10 business days from date of receipt of faxed/digital

---

[3] The time and date of the transmission is not documented in the record.

[4] The document bears a heading "Single Case Agreement." The parties dispute the nature of the document; PSC characterizes it as an offer that invited its acceptance to form a binding settlement agreement, whereas defendants essentially characterize it as merely an in invitation for the recipient, PSC, to present a settlement proposal at a specified reduced sum. For purposes of this opinion, we use the more neutral term "portal document."

A-2039-24

signature."

The body of the portal document further specified as follows:

By signing below, Plastic Surgery Center ("Provider") agrees to: (i) accept the Agreed Amount (less deductible, co-insurance, co -payment or other patient responsibility or non-covered services as defined by the plan) as payment in full for claims/bills from plans serviced by MultiPlan that are submitted by Payor/Client and determined to be eligible for the services rendered to the Patient on the dates listed above; (ii) not to balance bill the Patient for the difference between the Amount of the Claim/Bill and the Agreed Amount; and (iii) reduce the liability of the Patient and Payor/Client.

By signing below, the Provider agrees and acknowledges that: (i) MARS and MultiPlan are not payors and are not financially responsible for any payments due to the Provider; (ii) the payment of benefits, if any, is subject to the terms and conditions of the Patient's plan; and (iii) this agreement does not constitute, nor should it be construed as a guarantee of benefit payment by the Payor/Client. Provider retains the right to bill the Patient (or financially responsible party) for items not covered under the Patient's benefit

[(Emphasis added).]

PSC contends, despite the various disclaimers, it nonetheless perceived the portal document to be an offer from United to enter into a binding settlement agreement. An agent for PSC digitally signed the document on December 4, 2020, at 9:21:14 A.M. The portal document was, seemingly, the only

5

communication made regarding the claim between the defendants and PSC before PSC responded to it, as the record does not reflect any additional telephone calls, text messages, or emails between PSC and either defendant during that time.

Thereafter, United ultimately only paid PSC $2,425.86 for the procedure. After being contacted by PSC, United declined to pay the remainder of the supposedly agreed-upon amount of $54,000, i.e., $51,574.14.

In the wake of these events, PSC filed a complaint in the Law Division against defendants. The complaint alleged breach of contract by United, along with alternative theories of promissory estoppel and negligent misrepresentation by both United and MARS.

Fundamentally, PSC claimed that it had entered into an enforceable settlement agreement with United. PSC further contended it had relied on the portal document to its detriment by reducing the amount of its original claim and forfeiting the right to balance-bill the patient. PSC also claimed that defendants' representations about payment were false and without a reasonable basis for defendants to regard them as true.

United and MARS both moved to dismiss the complaint for failure to state a claim pursuant to Rule 4:6-2(e). They principally invoked the various

6

disclaimers within the portal document we have quoted above. As a separate argument, United also contended that PSC's lawsuit was preempted under federal law by ERISA.

At oral argument on the motion, United reiterated its position that the portal document was not an offer by United to enter into a binding agreement but instead, clearly an invitation to PSC to reduce its proposal for payment. MARS, meanwhile, asserted that while it was acting as a "vendor" for United, it was not authorized to enter into any settlement agreements on its behalf and never represented otherwise. MARS characterized its role in the transaction as identifying a lower, more "reasonable" cost for the surgery, finding out if PSC would agree to that payment figure, and then informing United whether PSC would agree to accept the lower amount as full payment for the claim.

During its colloquy with counsel, the motion court expressed skepticism as to why PSC would "cut their demand by fifty percent in exchange for nothing." When the court asked whether United's failure to pay the proposed amount meant that PSC could now balance-bill B.S., counsel for PSC expressed uncertainty.

Despite these concerns, the court granted dismissal of the complaint in its entirety. Among other things, the court concluded in its oral decision that PSC's

signing of the portal document did not result in a contract because: (1) the document never stipulated that United agreed to do anything; and (2) MARS was explicitly identified as not being responsible for any payments. The court also rejected PSC's claims of promissory estoppel and misrepresentation. The court did not reach United's ERISA preemption argument.

This appeal followed. We review the matter de novo, because the construction of a contract is a question of law and thus is subject to de novo review. Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011). The scope of that legal review includes deciding whether contract provisions are clear and unambiguous. See Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997). Also, when reviewing, de novo, a Rule 4:6-2(e) dismissal for failure to state a claim, appellate courts "assume all allegations in the pleadings are true and afford the pleader all reasonable inferences." Sparroween, LLC v. Twp. of W. Caldwell. 452 N.J. Super. 329, 339 (App. Div. 2017).

Having applied the applicable legal principles to the record, we affirm the trial court's dismissal, substantially for the sound reasons noted by the motion judge. We add only a few comments.

It is well settled that "[a] contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party

can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting W. Caldwell v. Caldwell, 26 N.J. 9, 24-25 (1958)). To be enforceable, a contract must "agree on essential terms and manifest an intention to be bound by those terms." Ibid.

Here, the trial court correctly found there was no clearly expressed intention by either United or MARS to be bound by a $54,000 amount to settle this billing dispute. Despite the use of the term "agreed amount" in the heading of the portal document, the terms that followed beneath the heading made it very clear that neither United nor MARS was bound to accept an offer by PSC to settle the matter at that figure.

Considering the terms of the portal document in their totality, the communication, at most, was an invitation to PSC to reduce its demand unilaterally. It is generally unreasonable for an "offeree" to presume that an offer is being made if it is "reasonably apparent that some further act of the offeror is necessary" before a contract is created. Creek Ranch, Inc. v. N.J. Tpk. Auth., 75 N.J. 421, 428 (1975) (quoting Corbin, Contracts § 11 at 25 (1962)) (emphasis added). "A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a

further manifestation of assent." Restatement (Second) of Contracts § 26 (1981).

There was no need for consideration in exchange for the request that PSC lower its original demand. PSC could have withdrawn the initial, higher offer or revised it at any time before an acceptance by United. See Restatement (Second) of Contracts, § 36(1)(c) (listing "revocation" as a way to terminate the power of acceptance).

We also concur with the dismissal of PSC's promissory estoppel and misrepresentation claims. A theory of promissory estoppel fails here because, given the disclaimers within the portal document, there was no "clear and definite promise" upon which PSC could have "reasonably relied." Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington Cnty., 194 N.J. 223, 253 (2008) (noting, among others, these essential elements of promissory estoppel) (citing Lobiondo v. O'Callaghan, 357 N.J. Super. 488, 499 (App. Div. 2003)). Negligent misrepresentation likewise is unavailing because it requires, among other things, that the plaintiff had "justifiably relied on" the alleged false statement. Kaufman v. i-Stat Corp., 165 N.J. 94, 109 (2000) (quoting H.

Rosenblum, Inc. v. Adler, 93 N.J. 324, 334 (1983)) (alterations in original). Again, no such justifiable reliance is present here.[5]

Because we are affirming the complaint's dismissal, we need not reach United's ERISA argument other than to note by observation the Third Circuit case law disfavoring an expansive preemptive construction of the statute to billing disputes between providers and insurers. Plastic Surgery Center, P.A. v. Aetna Life Ins. Co., 967 F.3d 218, 230-31 (3d Cir. 2020). The patient's employer's ERISA plan is not germane to the common-law contract and settlement issues before us.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

---

[5] That said, nothing in this opinion precludes anyone from calling to the attention of regulatory authorities the practices involved in this matter. We do not express any views about the need or propriety of such a possible regulatory review or response.

A-2039-24